*402°°* Date *11/6/23*

*3-0369* Initials *GA*

Filed ___ Received ___ Entered ___ Served On
Counsel/Parties of Record

NOV 0 6 2023

Clerk US District Court
District of Nevada

By:_____ Deputy

Norman L. Allen
Attorney at Law
Nevada State Bar No. 704
Post Office Box 19206
Reno, Nevada 89511
(775) 813-3847
nlallen@yahoo.com

Peter Capossela
Attorney at Law PC
Nevada State Bar No. 4231
Post Office Box 100643
Eugene, Oregon 97440
(541) 505-4883
pcapossela@nu-world.com

Attorneys for Plaintiff Marilyn Bitisillie

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| Marilyn Bitisillie, | ) |
| | ) **3:23-cv-545** |
| Plaintiff, | ) |
| | ) Case No. |
| v. | ) |
| | ) Plaintiff Marilyn Bitisillie |
| Debra Haaland, | ) Verified Complaint |
| in her capacity as Secretary, | ) |
| U.S. Department of the Interior, | ) |
| the U.S. Department of the Interior, | ) |
| | ) |
| Defendants. | ) |
| | ) |

Comes Now Marilyn Bitisillie, by and through undersigned counsel, and hereby states and alleges for her Complaint of Age Discrimination and Gender Discrimination:

1

Overview of Allegations

1.      This action is brought by Plaintiff Marilyn Bitisillie, a long-time employee of the Bureau of Indian Affairs of the U.S. Department of the Interior, for age discrimination under the Age Discrimination and Employment Act, 29 U.S.C. §623, and gender discrimination under Title VII of the Civil Rights Act of 1964, as amended.  42 U.S.C. §2000e-2(a)(1).

2.      Plaintiff began working for the Bureau of Indian Affairs (BIA) in 1987, starting out as a secretary in the Western Nevada Agency and working her way up to Branch Chief of the Self Determination office.  Plaintiff has worked at the Western Nevada Agency in Carson City for her entire career.

3.      For most of that time, the Western Nevada Agency operated with stable leadership.   From 1987 through to approximately 2015, there were long-term supervisors that remained in their position for many years, lending stability and professionalism to the office.

4.      Beginning in 2015, the leadership has rotated among several superintendents and acting superintendents.   Plaintiff experienced declining professionalism and stability with the new rotating leadership.  She has been subject to adverse employment actions and a hostile work environment as part of the overall decline in the professionalism of the Western Nevada Agency.

5.      The Self Determination Office, where plaintiff works, administers grants and contracts to western Nevada's Indian Tribes, enabling the Tribes to operate a wide range of federal programs in their Reservation communities.  Plaintiff managed this office from 2007 until May 14, 2019, when she was stripped of her supervisory

authority over her department and relocated out of her work area.  She had obtained a Protective Order in Washoe Tribal Court to prevent a problem male subordinate from going near her home.  The employer's response was to take away her supervisory authority, move her work station and then to promote the younger male subordinate that bullied her to assume her authority as Awarding Officer for Tribal contracts.

6.      Plaintiff filed a complaint under the agency's Equal Employment Opportunity policy, seeking restoration of her supervisory authority and damages. On July 30, 2019, she filed timely request for a hearing before an Administrative Law Judge.   Nearly three years later, on March 28, 2022, the Commission assigned ALJ Matthew Mong to plaintiff Bitisillie's case.   He entered an order granting the agency's motion for summary judgment on August 8, 2023.  This action follows.

<u>Jurisdiction and Venue</u>

7.      This court possesses jurisdiction over Plaintiff's causes of action pursuant to 28 U.S.C. §1343.

8.      Venue for all causes of action stated herein lies within the District of Nevada as the acts alleged as the basis of federal claims took place and continue to take place within this District.

<u>Parties</u>

9.      Plaintiff Marilyn Bitisillie resides at 622 Clear Creek Avenue, Carson City, Nevada 89701, in the Stewart Colony neighborhood of the Washoe Indian Reservation.   Plaintiff is an enrolled member of the Washoe Tribe of Nevada and California.  Her date of birth is March 27, 1953.  She is 70 years old.

10.     Defendant Debra Haaland is the Secretary of the United States Department of the Interior.  Defendant Department of the Interior is an agency of the United States comprising numerous bureaus and sub-agencies, including the Bureau of Indian Affairs.  Secretary Haaland and the headquarters of the Department of the Interior are located at 1849 C Street NW Washington D.C. 20240. All acts or omissions complained of took place in the workplace of defendant Department of the Interior under the supervision and control of defendant Haaland, and were effectuated by employees or agents of the Department.

11.     All acts and omissions complained of occurred at the Bureau of Indian Affairs Western Nevada Agency, 311 East Washington Street Carson City, Nevada 89701, phone number (775) 887-3500.

<u>General Allegations</u>

12.     Plaintiff is employed by the Bureau of Indian Affairs of the Department of the Interior.  She began her career in 1987 as an Administrative Assistant, and in 2004 she was appointed Self Determination Specialist in the Self Determination contracting branch.  In this position, she prepared contracts, contract amendments and related documents for the funding and administration of Tribal programs.

13.     Beginning on August 11, 2007, plaintiff was appointed Awarding Official, the senior official in the Self Determination Branch.  This position gives final approval to BIA grants and contracts, with Indian Tribal Nations in western Nevada.  She has supervised up to three individuals in the Self Determination branch

14.     In her prior positions and in her position as Self Determination Specialist/Awarding Official, plaintiff has at all times satisfactorily performed her

4

duties. She has earned favorable performance evaluations under numerous supervisors at the Western Nevada Agency.

15.    As a senior branch chief at the Western Nevada Agency, plaintiff has served in the line of succession to serve as acting superintendent of the Western Nevada Agency in the absence of the superintendent. In this capacity, she often served as supervisor of the entire Western Nevada Agency office.

16.    Robert Eben served as superintendent of the Western Nevada Agency from May 2015, until his retirement on December 31, 2020. Eben was plaintiff's immediate supervisor during this time period.

17.    All acts of omissions complained of, during the period of May 2015 through December 31, 2020, took place by, or at Eben's direction and supervision.

18.    Upon his appointment as Western Agency Nevada Superintendent, Eben's interactions with plaintiff and other older female employees gave rise to a hostile work environment for women, especially older women, including plaintiff.

19.    Eben spoke openly in common areas of the office, and in staff meetings, about plaintiff's age and his opinion that she should retire. Work-related discussions between Superintendent Eben and plaintiff routinely devolved into Eben's encouraging – and pressuring – plaintiff to retire. This had been going on since Eben began his tenure at Western Nevada Agency in 2015.

20.    In meetings with Branch Chiefs, including plaintiff, when pending complaints of age or gender discrimination were discussed, Superintendent Eben disparaged the EEOC process and boasted of always prevailing when complaints were filed against him. Superintendent Eben also discussed EEOC complaints with

5

plaintiff alone, and expressed extreme confidence that he prevailed when discrimination complaints were made against him. Eben disparaged individuals that had filed prior discrimination complaints against him to plaintiff. This occurred, for example, in approximately January, 2018, in a conversation relating to an EEOC complaint filed by a former employee of the Self Determination office.

21.     Eben routinely made attempts at humor invoking female stereotypes, openly in the office, often directing such attempt at humor at plaintiff.

22.     Eben also openly made statements regarding violence against women as if it were a joke. He made jokes in the office about his own wife deserving to be slapped. Eben's numerous proclamations about his success in fighting discrimination complaints against him, and his sexist jokes, created a hostile work environment, subjecting plaintiff to age discrimination and gender discrimination.

23.     In approximately December 2017, the Bureau of Indian Affairs offered a Voluntary Early Retirement Plan for eligible employees. Plaintiff was eligible for the Early Retirement Plan.

24.     On numerous occasions in approximately January through March, 2018, Superintendent Eben and encouraged plaintiff to enroll in the Early Retirement Plan. He did this repeatedly.   He did so in front of other Western Nevada Agency employees, including the Branch Chiefs and staff of other departments. Plaintiff justifiably believed he was attempting to force her out. Eben's workplace statements pressuring plaintiff to retire were open, severe and pervasive, and caused her stress and sleeplessness.

25.     Eben spoke openly of encouraging the retirement of both plaintiff and two other women working at the Western Nevada Agency.   Eben initiated a discussion with plaintiff in which he asked her to talk to the two other women and encourage them to accept the Early Retirement Plan.   He used strong language, suggesting that it was a directive that plaintiff convince the other two women to accept the Early Retirement Plan, and that he wanted plaintiff to retire as well.

26.     Upon plaintiff's information and belief, Eben never encouraged any employees that are substantially younger to accept the Early Retirement Plan.

27.     Upon plaintiff's information and belief, Eben never encouraged any male employees to accept the Early Retirement Plan.

28.     A Self Determination Specialist position in the Self Determination department had become vacant in approximately January, 2016.   Plaintiff had supervised that position since 2007.   Prior to the January 2016 vacancy, as the immediate supervisor, plaintiff had been involved in interviews and the hiring process for the Self Determination Specialist positions.   This vacancy was the first time a Self Determination Specialist position came open in plaintiff's department since Eben had become superintendent.   Eben did not include plaintiff at any stage of the hiring process.   In June, 2016, Eben hired Michael F. Garcia for the Self Determination Specialist position.

29.     Upon plaintiff's information and belief, Michael F. Garcia was a friend and prior colleague of Eben's.   They previously worked together at the BIA office in Riverside, California.   Upon Garcia's being hired at Western Nevada Agency, plaintiff became his immediate supervisor.

30.     Upon the commencement of Garcia's employment at Western Nevada Agency, plaintiff attempted to train him about office procedures for Tribal contracts and grants, with an emphasis on remaining current with respect to financial reports and contract modifications.

31.     From the beginning, Garcia was argumentative and insubordinate with plaintiff.  He repeatedly argued during the first several months of his employment at Western Nevada Agency that the procedures for contract administration were different than those at his prior position in Riverside. His reports to plaintiff did not include the information she requested.  During this period, in late 2017 and into 2018, he routinely questioned tasks that were assigned to him, rather than performing the tasks.  He insisted on changes to long-standing procedures in the Self Determination department, and was generally uncooperative.

32.     Due to Garcia's intransigence, plaintiff gave him verbal warnings on numerous occasions, including in approximately January, 2018.

33.     After plaintiff gave Garcia a verbal warning in January, 2018, Garcia suggested to her that he was immune from discipline by his immediate supervisor, plaintiff, because of his close relationship with Eben, who was plaintiff's immediate supervisor.

34.     Garcia's conduct in the Western Nevada Agency office became disruptive for the Self Determination department.  He would routinely challenge plaintiff on contract administration procedures in front of the Self Determination department staff, and other staff at Western Nevada Agency.  He also made inappropriate inquiries into plaintiff's personal life while in the office, and drove past

her home on several occasions in April-May 2018.   Garcia's conduct in the office toward plaintiff was overly aggressive, and his conduct outside of the office could be interpreted as threatening.   Plaintiff suffered stress-related illness as a result.

35.   Plaintiff emailed Eben on March 28, 2019 regarding Garcia's increasingly problematic conduct.  There was no response.

36.   On May 3, 2019, Garcia's actions prompted plaintiff to petition the Washoe Tribal Court for a temporary restraining order.  On May 10, the court issued a restraining order against Garcia, prohibiting him from coming closer than 100 feet from her home (Washoe Tribal Court, Case No. 19-0708).  The court order stated that Garcia's behavior "would cause a reasonable person to feel terrorized, frightened, intimidated or harassed."  (Exhibit A attached hereto).

37.   On June 3, 2019, the Department of the Interior Associate Solicitor Nanette Gonzalez wrote a letter to Washoe Tribal Chief Judge Patricia Lenzi, arguing that the court lacked jurisdiction to issue the *Protection Order* and threatened legal action unless the court vacated the order. (Exhibit B attached hereto).

38.   As Michael Garcia is Native American, the Washoe Tribal Court unmistakably possesses jurisdiction over misdemeanor criminal activity that he may have committed on Washoe Tribal land.  25 U.S.C. §1301(2).

39.   The Centers for Disease Control and Prevention has determined that Indian women residing on Reservation land, such as plaintiff, are murdered at a rate 10 times the national average, and homicide is the third leading cause of death among women living in Indian Country.  *See* https://www.bia.gov/service/mmu/missing-and-murdered-indigenous-people-crisis.

40.     The issue of women's safety on Indian lands is such a crisis that defendant Haaland took administrative action on April 1, 2021 creating a new Missing and Murdered Unit in BIA's Office of Justice Services.

41.     Plaintiff reasonably perceived the agency's actions following the issuance of the Tribal Court protection order as supporting an insubordinate and potentially unstable co-worker, and as being against her.  This caused her to fear for her safety in the workplace and caused severe emotional distress.

42.     After plaintiff obtained the temporary restraining order to prevent Garcia from harassing her outside of the workplace, Eben's conduct toward her became increasingly hostile.  Eben refused to cooperate with plaintiff in ways that prevented her from doing her job as she had done it for years.  For example, on May 22, 2019, the Social Services Branch Chief asked plaintiff to accompany her to a meeting at the Fort McDermitt Indian Reservation to discuss modifying an existing contract to update the social services work plan.  As this was a contract matter, it would be routine for plaintiff to attend this meeting, but Eben rejected her travel authorization.

43.     In approximately March 2019, plaintiff requested to attend a training that was required to maintain the status of Awarding Official.  When asked about the reason for denying a training that would be helpful in improving job performance and maintaining her warrant, Eben responded by asking "when are you going to retire?"

44.     On May 14, 2019, Eben informed plaintiff via email that he was changing the lines of authority in the Self Determination Branch and removing plaintiff's supervisory authority over the Self Determination Specialist(s) in her office, thereby assuming direct supervisory authority over her office.   (Exhibit C

attached hereto).  This adverse personnel action removed plaintiff's supervision of Garcia, undermined her ability to manage the Western Nevada Agency Self Determination Office, and was tantamount to a negative classification.

45.     The May 14th adverse action taken against plaintiff violated the Bureau of Indian Affairs' Manual, which states "all persons who may have an interest in what is being done under a contract must work through the awarding official and not through the technical representatives, contractor or superintendent."   20 BIAM Supplement 2 (BIAM Bulletin 9442).  The agency's action violated the BIA Manual for the Self Determination Branch and jeopardized plaintiff's personnel record and ability to increase her general services ranking and to supervise future employees.

46.     On December 31, 2020, Eben retired as superintendent of BIA's Western Nevada Agency.

47.     Upon plaintiff's information and belief, Rachel Larson was hired as superintendent of the Western Nevada Agency in October 2021, and she became plaintiff's supervisor.

48.     All acts of omissions complained of, from October 2021 to August 2022, took place by, or at the direction and supervision of, plaintiff's immediate supervisor during this period, Rachel Larson.

49.     On March 31, 2022, plaintiff's warrant as the Awarding Official for Tribal grants and contracts at the Western Nevada Agency expired. The agency had failed to renew her long-time authority to serve as Awarding Official due to Eben's denial of her requests to attend trainings.   This adverse employment action permanently removed her longstanding authority over subordinate employees in the

Self Determination Branch, and significantly diminished plaintiff's duties and prestige at the Western Nevada Agency.

50.     Plaintiff remained qualified to serve as Awarding Official at the Western Nevada Agency as she has done from 2007 until April 1, 2022, and to supervise all employees of the Self Determination Branch, as she has done from 2007 until May 24, 2019.

51.     Beginning on April 1, 2022, Michael Garcia, a substantially younger male whose experience and qualifications are inferior to plaintiff's, was given plaintiff's role as Awarding Official at the Western Nevada Agency.  That act placed Garcia in the position of supervising plaintiff's work.   It placed a lower ranking official in charge of approving plaintiff's work, in violation of Department of the Interior and General Services Administration policy.  This continued from April 1, 2022 until September 1, 2022, when plaintiff's status as Awarding official was restored.

52.     On April 1, 2022, Larson removed plaintiff from the supervisory line of succession to serve as Acting Superintendent of the Western Nevada Agency. (Exhibit D).  This act placed lower ranking officials as plaintiff's supervisor when the Superintendent is not present, in violation of Department of the Interior and General Services Administration policy.

53.     On approximately April 20, 2022, Larson ordered plaintiff to move her work station out of the Self Determination office, where she had her desk and had supervised subordinates there for 12 years, and a desk was set up for plaintiff in a remote hallway in the back of the building.

54.     In addition to damaging plaintiff's career, the agency's adverse actions taken against plaintiff diminish the capacity of the Western Nevada Agency Self Determination Office to operate effectively in service to the Indian Tribes.   Upon plaintiff's information and belief, at least two Nevada Tribes have written letters to the agency, questioning a recent decline in technical assistance being provided by the Self Determination office.

55.     In approximately August, 2022, Rachel Larson transferred to a different position in the agency.   Thomas Hemstreet was her temporary replacement as plaintiff's immediate supervisor, as the acting Superintendent of BIA's Western Nevada Agency.

56.     On September 1, 2022, the agency restored plaintiff's warrant as Awarding Official for Tribal grants and contracts.  (Exhibit E attached hereto).

57.     On September 22, 2022, the agency restored plaintiff's proper place in the supervisory line of succession at the Western Nevada agency.  (Exhibit F attached hereto).

58.     Plaintiff's supervisory authority over the Self Determination office has not been restored, and the agency continues to violate its own policies in the Bureau of Indian Affairs Manual relating to the supervision of Tribal grants and contracts. The program continues to suffer from the uncertainty in the Western Nevada Agency Self Determination department, caused by the actions complained of herein.

<u>Exhaustion of Administrative Remedies</u>

59.     The agency's adverse employment action removing plaintiff's supervisory authority over the Self Determination branch was taken on May 14, 2018.

(Exhibit C, attached hereto). The agency's adverse employment action removing her plaintiff's warrant as Awarding official occurred on April 1, 2022. The agency's adverse action removing plaintiff from the Western Nevada Agency supervisory line of succession was taken on April 1, 2022. (Exhibit D attached hereto).

60.     Plaintiff filed a timely charge of age and gender discrimination with the Equal Opportunity Employment Commission, and request for a hearing before an Administrative Law Judge on July 30, 2019.

61.     On March 28, 2022, the Commission assigned ALJ Matthew Mong to plaintiff's case. He entered an order granting the agency's motion for summary judgment on August 8, 2023. A copy of the agency's right to sue letter is attached as Exhibit G.

62.     All prerequisites to the filing of this suit have been met, including the exhaustion of administrative remedies. Plaintiff has incurred expenses, including reasonable attorney expenses, because of the facts alleged.

**Cause of Action for Discrimination Under the
Age Discrimination in Employment Act**

63.     Plaintiff re-alleges paragraphs 1-62, above.

64.     Plaintiff Marilyn Bitisillie is 70 years old, and she enjoys a level of physical and mental health that enables her to perform all of the duties of the Awarding Official and Branch Chief in the BIA Western Nevada Agency Self Determination department, as she had up until the adverse actions complained of herein. She is eligible for full retirement benefits.

65.     Plaintiff is adversely affected by actions taken by Eben and Larson, constituting age discrimination under the Age Discrimination in Employment Act, 29 U.S.C. §621 *et seq.* (ADEA).

66.     The acts of Superintendent Eben to pressure older women at the Western Nevada Agency to enroll in the Early Retirement Plan while engaging in no similar conduct to younger women constitutes disparate treatment based upon age, in violation of the ADEA.

67.     The denial of training opportunities to plaintiff on the grounds of "when are you going to retire?" while approving comparable training requests by younger employees, constitutes disparate treatment based upon age in the area of training and advancement, in violation of the ADEA.

68.     The pervasive statements of Superintendent Eben disparaging the process established for complaints of age discrimination by federal employees, and prior complainants who invoked that process, and his boasting of his success in defeating prior claims of discrimination made against him, created a hostile work environment at the Western Nevada Agency.

69.     Plaintiff has been forced to work in a hostile work environment for older women, constituting age discrimination under the ADEA.

70.     The beneficiary of Eben and Larson's acts and omissions complained of herein, Michael F. Garcia, is a substantially younger male and is manifestly less qualified than plaintiff.

71.     The acts and omissions of Eben and Larson complained of herein were carried out within the course and scope of their office, as supervisors with defendant

15

Department of the Interior's Bureau of Indian Affairs, in the Western Nevada Agency, and such acts and omissions discriminated against plaintiff in violation of the ADEA.

72.     The acts and omissions of Eben and Larson complained of herein were intentional, willful and in reckless disregard of plaintiff's federally-protected rights as an employee of the Department of the Interior.

73.     The report of investigation filed in the administrative proceeding below contained an affidavit of plaintiff's co-worker Marliss Hubbard, describing the age discrimination she witnessed, "In a joking manner, Mr. Eben said to Marilyn 'When you retire you can do this and that'... Awhile back, there were questions about retirement, and the voluntary buy-out, and that is when the subject came up. Initially, I did not see Mr. Eben's comments as inappropriate, but later I saw it as repeated and to be on a continuous basis.... what was he trying to make a point of saying? ... those comments would appear to pressure her to question her retirement plans when she may have not been ready to." Report of Investigation, Agency Case No. DOI-BIA-19-0475 at 219.

74.     On January 7, 2021, plaintiff's counsel deposed Robert Eben. Eben acknowledged that plaintiff's insubordinate employee treated her in an aggressive manner: "Well, Mike's aggressive, like I said, he pushes." *Bitisillie v. Haaland*, EEO No.550-2020-00262X, "Transcript, *Remote Deposition of Robert Eben*," (January 6, 2020) p. 38.

75.     Eben blamed plaintiff for the insubordinate employee's aggressive and inappropriate conduct, and he justified the employee' insubordination using coded

language of age discrimination: "I would describe the conflict as Old School vs. New School. I see this a lot in the Bureau with older employees. In their way of thinking, if your supervisor tells you to do something, you do it. I told Marilyn to read some books on Gen X and Gen Y." *Id.* at 134.

76.     The acts and omissions complained of resulted in a hostile work environment for plaintiff, as an older employee with the agency.

77.     Plaintiff has been divested of her longtime supervisory authority over the Self Determination branch of the Western Nevada Agency, from May 14, 2019 to the present.

78.     As a direct result of the acts and omissions of Eben and Larson complained of herein, plaintiff was divested of her supervisory authority in the line of succession at BIA's Western Nevada Agency from April 1, 2022 until September 22, 2022, when it was restored by Rachel Larson's successor as Superintendent, Robert Hemstreet.

79.     Plaintiff has suffered severe emotional distress, sleeplessness, loss of self-esteem in the workplace, damage to her reputation, humiliation and potential loss of promotion and earnings.

80.     At all times relevant hereto, defendants had actual or constructive knowledge of the conduct of Robert Eben and Rachel Lawson described herein.

81.     Defendants failed to take all reasonable steps to prevent age discrimination from occurring, and to protect plaintiff from age discrimination.

<u>Cause of Action for Gender Discrimination Under Title VII of the Civil Rights Act</u>

82.     Plaintiff re-alleges paragraphs 1-62, above.

83.     Plaintiff is female.

84.     The pressure applied by Eben to certain women at the Western Nevada Agency to enroll in the federal Early Retirement Plan, while engaging in no similar conduct to males similarly situated, violates Title VII of the Civil Rights Act of 1964. 42 U.S.C. §2000e-16(a).

85.     Eben's pervasive statements disparaging the process established for complaints of gender discrimination by federal employees, and prior employees who invoked that process, and his boasting of his success in defeating prior claims of discrimination made against him, were made with the intent and had the effect of being a threat against future gender discrimination complaints.

86.     Eben's openly telling gender-based "jokes," including "jokes" involving domestic violence and violence against his own spouse, along with other conduct complained of herein, subjected plaintiff to a hostile work environment based upon her gender, constituting gender discrimination in violation of Title VII.

87.     The agency's acquiescence to Michael Garcia's admittedly aggressive behavior toward plaintiff subjected her to a hostile work environment based upon her gender.

88.     The promotion of Garcia to Awarding Official in place of plaintiff, and placing him in a position of supervising plaintiff's work product, after he acted in an aggressive, insubordinate and threatening manner toward her, subjected plaintiff to a hostile work environment based upon her gender.

89.     The actions of the agency solicitor, writing an ex parte communication to the Washoe Tribal Judge, urging her to vacate the Protection Order obtained by

plaintiff against a bizarre co-worker, put plaintiff in a reasonable fear of danger of physical harm in the workplace and subjected her to a hostile work environment based upon her gender.

90.     The acts and omissions of Eben and Larson complained of herein were intentional, willful and in reckless disregard of plaintiff's federally-protected rights as an employee of the Bureau of Indian Affairs.

91.     At all times relevant hereto, defendants had actual or constructive knowledge of the conduct of Robert Eben and Rachel Lawson described herein.

92.     Defendants failed to take all reasonable steps to prevent gender discrimination from occurring, and to protect plaintiff from gender discrimination.

93.     As a direct result of the acts and omissions of Eben and Larson complained of herein, plaintiff has suffered severe emotional distress, sleeplessness, loss of self-esteem in the workplace, damage to her reputation and potential loss of promotion and earnings.

<u>Cause of Action for Retaliation</u>

94.     Plaintiff re-alleges paragraphs 1-62, above.

95.     Eben's removal of plaintiff's supervisory authority over the employees in the Self Determination branch on May 14, 2019 was an act of retaliation for her obtaining a Protection Order enjoining Michael Garcia from going near her home.

96.     When the agency refused to renew plaintiff's warrant as Awarding Official at the Western Nevada Agency on April 1, 2022, it was aware that she had made charges of age and gender discrimination against the agency.

97.     The agency's refusal to renew plaintiff's warrant as the Awarding Official at the Western Nevada Agency constituted retaliation for her charges of age and gender discrimination.

98.     On April 1, 2022, Larson issued a memorandum that removed plaintiff from the supervisory line of succession at the Western Nevada Agency, and placed lower ranking and less qualified employees above her in the line of succession. (Attached hereto as Exhibit G).  This violated Department of the Interior and General Services Administration policy.

99.     When Larson removed plaintiff from the supervisory line of succession, she as aware that she had made charges of age and gender discrimination against the agency.

100.    Larson sent an email to plaintiff on April 4, 2022, explicitly describing the agency's retaliatory motive for removing plaintiff from the supervisory line of succession: "...I want to add, since you do have pending issues with Michael Garcia, you should not be supervising him, as Acting Superintendent."

101.    Larson's removal of plaintiff from the supervisory line of succession constituted retaliation for her charges of age and gender discrimination.

102.    On April 4, 2022, Larson refused plaintiff's request to work remotely, although such requests have been routinely granted to other employees at the Western Nevada Agency,

103.    On April 4, 2022, Larson relocated plaintiff's work station to a back hallway, separated from the main office and at an inconvenient location for her to access contract files necessary for her to perform her duties.

20

103.     On April 4, 2022, Larson relocated plaintiff's work station to a back hallway, separated from the main office and at an inconvenient location for her to access contract files necessary for her to perform her duties.

104.     When Larson refused plaintiff's request to work remotely, and instead moved her to a remote, inconvenient hallway away from the main office, she was aware that she had made charges of age and gender discrimination against the agency.

105.     The refusal to allow plaintiff to work from home and the relocation of her work station constituted retaliation for her charges of age and gender discrimination.

106.     The acts and omissions of Larson complained of herein were carried out within the course and scope of her office as Superintendent of Western Nevada Agency.

107.     The acts and omissions of Larson complained of herein were intentional, willful and in reckless disregard of complainant's federally-protected rights as an employee of the Bureau of Indian Affairs.

108.     At all times relevant hereto, defendants had actual or constructive knowledge of the conduct of Robert Eben and Rachel Lawson described herein.

109.     Defendants failed to take all reasonable steps to prevent retaliation from occurring, and to protect plaintiff from retaliation for the filing of charges of age and gender discrimination.

WHEREFORE, plaintiff Marilyn Bitisillie respectfully requests judgment as follows:

1.    An order directing defendants to fully restore plaintiff's supervisory authority over the Western Nevada Agency Self Determination department and to fully comply with 20 BIAM Supplement 2 (BIAM Bulletin 94).

2.    Compensatory damages and general damages as proved at trial.

3.    Reasonable attorney's fees and costs.

4.    Such other and further relief as the court deems just and proper.

DATED this 6th day of November 2023

By:    *Norman L. Allen*
        Norman L. Allen
        Attorney at Law
        Nevada State Bar No. 704
        Post Office Box 19206
        Reno, Nevada 89511
        (775) 813-3847
        nlallen@yahoo.com

        *Peter Capossela*

        Peter Capossela
        Attorney at Law, PC
        Nevada State Bar No. 4231
        Post Office Box 10643
        Eugene, Oregon 97440
        (541) 505-4883
        pcapossela@nu-world.com

        Attorneys for Plaintiff Marilyn Bitisillie