**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

* * *

| | |
|---|---|
| MARILYN BITISILLIE, | Case No. 3:23-CV-00545-CLB |
| Plaintiff, | **ORDER GRANTING DEFENDANTS'** |
| v. | **MOTION FOR SUMMARY JUDGMENT** |
| | **AND DENYING PLAINTIFF'S MOTION** |
| | **FOR PARTIAL SUMMARY JUDGMENT** |
| DEBRA HAALAND, in her official capacity as Secretary, U.S. Department of Interior, and the U.S. DEPARTMENT OF INTERIOR, | [ECF Nos. 29, 31] |
| Defendants. | |

This case involves an employment discrimination dispute between Plaintiff Marilyn Bitisillie ("Bitisillie") and Defendants Debra Haaland, in her capacity as Secretary of the United States Department of Interior, and the United States Department of Interior, collectively referred to as "Defendants." Defendants moved for summary judgment. (ECF No. 29.) Bitisillie opposed, (ECF No. 35), and Defendants replied, (ECF No. 36). Bitisillie also moved for partial summary judgment, (ECF No. 31), which Defendants opposed, (ECF No. 34), and Bitisillie replied, (ECF No. 37). For the foregoing reasons, the Court grants Defendants' Motion for Summary Judgment and denies Bitisillie's Motion for Partial Summary Judgment.

I.    **Background**

    A.    **Relevant Facts**

Bitisillie is a current employee of the Bureau of Indian Affairs ("BIA") at the BIA's Carson City Office. (ECF No. 1 at 2.) Bitisillie is a member of the Washoe Tribe of Nevada and California and was 70 years old at the time the complaint was filed. (*Id.* at 3.) The BIA is an agency within the United States Department of Interior that oversees the Federal Government's relations with Indian tribes around the country. Bitisillie has worked at the BIA since 1987 and worked her way up from the role of a secretary to Branch Chief of the Self-Determination Office. (*Id.*) The Self-Determination Office of the BIA administers

grants and contracts with Indian tribes so that tribes can operate federal programs within reservation communities. (*Id.* at 2-3.)

From May 2015 to December 2020, Robert Eben ("Eben") served as a Superintendent at the BIA and was Bitisillie's direct supervisor. (ECF Nos. 1 at 5; 29 at 8.) The BIA introduced a voluntary early retirement plan in 2017 and Bitisillie was eligible for the plan. (ECF Nos. 1 at 6; 29 at 10.) Eben and BIA staff openly discussed the early retirement plan and Eben admits having mentioned it a few times to Bitisillie and the staff generally. (ECF Nos. 1 at 6; 29 at 10.) However, Bitisillie herself admitted she was never forced to use the plan. (ECF No. 29-3 at 12.) Additionally, Eben admits to making some jokes and unsavory comments about his wife to the staff generally and having managerial differences with Bitisillie, but he denies he ever made an off-color remark to Bitisillie directly. (ECF No. 29 at 11.) Eben is a year younger than Bitisillie and retired in December of 2020.

In June of 2018, Eben hired Michael Garcia ("Garcia") as an Indian Self-Determination Specialist. (ECF Nos. 1 at 7; 29 at 9.) Until May 2019, Garcia reported to Bitisillie and was Bitisillie's only subordinate. (ECF Nos. 1 at 7; 29 at 9.) The decision to hire Garcia was made without Bitisillie's input. (ECF Nos. 1 at 7; 29 at 9.) Defendants and Bitisillie describe the relationship between Bitisillie and Garcia as disruptive due to their opposing personalities. (ECF Nos. 1 at 7-9; 29 at 9.) Garcia and Bitisillie had multiple disagreements because Garcia would often challenge the way things would get done. (ECF Nos. 1 at 7-9; 29 at 9.) Bitisillie alleges Garcia would so be aggressive she felt threatened. (ECF Nos. 1 at 7-9; 29 at 9.) However, Bitisillie admits Garcia never actually threatened or otherwise assaulted her. (ECF No. 29-3 at 13, 17-18.) Their disagreements and conflict rose to a point where Bitisillie sought and received a temporary protective order against Garcia by the Washoe Tribal Court. (ECF Nos. 1 at 9; 29 at 11-12.)

Following the issuance of the protective order, Eben reported the protective order to appropriate individuals at the BIA and directed Bitisillie and Garcia not to speak to each other than through email with Eben. (ECF Nos. 1 at 10-11; 29 at 8.) At this time, Eben

1    assumed direct supervision of Garcia. (ECF Nos. 1 at 10-11; 29 at 8.) Their complaints

2    of each other continued even after Eben retired in 2020 when Rachel Larson ("Larson")

3    was hired as the Superintendent.[1] (ECF No. 29-9 at 4-5.)

4        In 2021, Bitisillie's Awarding Certificate was terminated because she failed to

5    maintain the necessary training and credential requirements. (ECF No. 29-9 at 5, 7; 29-

6    10 at 2.) The decision  to terminate Bitisillie's Awarding Certification for failure to keep up

7    with training requirements was made by the Director of the BIA. (ECF No. 29-10 at 2.)

8    BIA internal emails show Bitisillie only completed 18.5 of 80 hours of training required

9    between December 2017 and December 2021. (ECF No. 29-11 at 4.) Bitisillie alleges she

10   was denied opportunities to attend trainings. (ECF No. 1 at 10.)

11       Upon the termination of Bitisillie's Awarding Certificate, Bitisillie was given an

12   opportunity by Larson to focus on retaining her credential. (ECF No. 29-9 at 7, 9.)

13   However, because Bitisillie was no longer an Awarding Official, she was removed from

14   the supervisory line of succession for a total of four months. (ECF No. 29 at 13.) During

15   this time, Bitisillie was never docked pay, demoted, or terminated from her position at the

16   BIA. (*Id.*) In September of 2022, Bitisillie's Awarding Credential and supervisory authority

17   was restored. (ECF Nos. 1 at 13; 29 at 13.)

18       **B.    Procedural History**

19       In July of 2019, Bitisillie filed a complaint with BIA's Equal Employment Opportunity

20   ("EEO") Office. (ECF No. 29-2.) In her EEO complaint, Bitisillie alleged she was subject

21   to hostile work environment harassment due to her gender, age, race, and national

22   original from May 2015 to May 2019 and that she was discriminated due to her gender,

23   age, race, and national origin. (*Id.*) An EEO investigation report was received by the BIA

24   in January of 2020. (*Id.*) In May of 2022, Bitisillie moved to amend her complaint with

25   additional claims. (ECF No. 29 at 8.) In January of 2023, the Administrative Judge ("AJ")

26   _____

27   [1]    Defendants also note Garcia brought his own EEO complaint against Bitisillie in
     November of 2019, alleging he was retaliated against by Bitisillie when Garcia appeared

28   as a witness with respect to another colleague's EEO complaint against Bitisillie. (ECF
     No. 29 at 9.)

1   denied Bitisillie's motion to amend, finding the proposed amended claims were not related

2   to Bitisillie's original claims. (*Id.*) In April of 2023, Bitisillie and the BIA moved for summary

3   judgment on Bitisillie's EEO complaint. (*Id.*) Ultimately, the AJ granted the BIA's motion

4   for summary judgment and denied Bitisillie's motion for summary judgment. (*Id.*) In

5   August of 2023, the BIA issued a final order implementing the AJ's decision. (ECF Nos.

6   1 at 3; 29 at 8.)

7           On November 6, 2023, Bitisillie initiated the present suit against Defendants

8   alleging three claims: (1) age discrimination under the Age Discrimination in Employment

9   Act ("ADEA"); (2) gender discrimination under Title VII of the Civil Rights Act of 1964; and

10  (3) retaliation. (ECF No. 1.) On March 4, 2024, Defendants answered. (ECF No. 10.)

11  Discovery closed on September 3, 2024. (ECF No. 20.)

12          On October 3, 2024, Defendants moved for summary judgment on each of

13  Bitisillie's claims. (ECF No. 29.)[2] The following day, Bitisillie moved for partial judgment

14  on a claim of hostile work environment and gender discrimination. (ECF No. 31.)[3]

15  **II.    LEGAL STANDARD**

16          "The court shall grant summary judgment if the movant shows that there is no

17  genuine dispute as to any material fact and the movant is entitled to judgment as a matter

18  of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The

19  substantive law applicable to the claims determines which facts are material. *Coles v.*

20  *Eagle*, 704 F.3d 624, 628 (9th Cir. 2012) (citing *Anderson v. Liberty Lobby*, 477 U.S. 242,

21  248 (1986)). Only disputes over facts that address the main legal question of the suit can

22  preclude summary judgment, and factual disputes that are irrelevant are not material.

23  *Frlekin v. Apple, Inc.*, 979 F.3d 639, 644 (9th Cir. 2020). A dispute is "genuine" only where

24  a reasonable jury could find for the nonmoving party. *Anderson*, 477 U.S. at 248.

25          The parties subject to a motion for summary judgment must: (1) cite facts from the

26  ─────────────
    [2]     Bitisillie opposed Defendants' motion, (ECF No. 35), and Defendants replied, (ECF

27  No. 36).

28  [3]     Defendants opposed Bitisillie's motion, (ECF No. 34), and Bitisillie replied, (ECF
    No. 37).

record, including but not limited to depositions, documents, and declarations, and then (2) "show[] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). Documents submitted during summary judgment must be authenticated, and if only personal knowledge authenticates a document (i.e., even a review of the contents of the document would not prove that it is authentic), an affidavit attesting to its authenticity must be attached to the submitted document. *Las Vegas Sands, LLC v. Neheme*, 632 F.3d 526, 532-33 (9th Cir. 2011). Conclusory statements, speculative opinions, pleading allegations, or other assertions uncorroborated by facts are insufficient to establish the absence or presence of a genuine dispute. *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007); *Stephens v. Union Pac. R.R. Co.*, 935 F.3d 852, 856 (9th Cir. 2019).

The moving party bears the initial burden of demonstrating an absence of a genuine dispute. *Soremekun*, 509 F.3d at 984. "Where the moving party will have the burden of proof on an issue at trial, the movant must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party." *Id.* However, if the moving party does not bear the burden of proof at trial, the moving party may meet their initial burden by demonstrating either: (1) there is an absence of evidence to support an essential element of the nonmoving party's claim or claims; or (2) submitting admissible evidence that establishes the record forecloses the possibility of a reasonable jury finding in favor of the nonmoving party. *See Pakootas v. Teck Cominco Metals, Ltd.*, 905 F.3d 565, 593-94 (9th Cir. 2018); *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). The court views all evidence and any inferences arising therefrom in the light most favorable to the nonmoving party. *Colwell v. Bannister*, 763 F.3d 1060, 1065 (9th Cir. 2014). If the moving party does not meet its burden for summary judgment, the nonmoving party is not required to provide evidentiary materials to oppose the motion, and the court will deny summary judgment. *Celotex*, 477 U.S. at 322-23. Where the moving party has met its burden, however, the burden shifts to the nonmoving party to

establish that a genuine issue of material fact actually exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, (1986).

An opposing party's failure to respond to a fact asserted in the motion permits a court to "consider the fact undisputed for purposes of the motion." *Heinemann v. Satterberg*, 731 F.3d 914, 917 (9th Cir. 2013) (citing Fed. R. Civ. P. 56(e)(2)). The Advisory Committee Notes explains that "[c]onsidering some facts undisputed does not of itself allow summary judgment. If there is a proper response or reply as to some facts, the court cannot grant summary judgment without determining whether those facts can be genuinely disputed." Fed. R. Civ. P. 56 Advisory Committee Notes (2010).

Where both parties to a lawsuit file their own motions for summary judgment, "the court must consider the appropriate evidentiary material identified and submitted in support of both motions, and in opposition to both motions, before ruling on each of them." *Tulalip Tribes of Wash. v. Wash.*, 783 F.3d 1151, 1156 (9th Cir. 2015) (citing *Fair Hous. Council of Riverside Cnty., Inc. v. Riverside Two*, 249 F.3d 1132, 1134 (9th Cir. 2001)).

## III.    DISCUSSION

### A.    Federal Defendants Motion for Summary Judgment

Defendants move for summary judgment on each of Bitisillie's causes of action: (1) age discrimination under the ADEA; (2) gender discrimination under Title VII; and (3) retaliation. The Court will address each claim in turn.

### 1.    Bitisillie's Age Discrimination Claim Under the ADEA

First, Defendants argue they are entitled to summary judgment on Bitisillie's age discrimination claim under the ADEA because Bitisillie has not made a prima facie case of age discrimination and cannot establish pretext for her age discrimination claim. (ECF No. 29 at 13-19.)

The ADEA makes it unlawful "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). "To establish a prima facie case of employment discrimination, a plaintiff

must show that (1) he belongs to a protected class; (2) he was performing according to the employer's legitimate expectations; (3) he suffered an adverse employment action; and (4) he was treated less favorably than similarly situated employees outside of his protected class." *Nghiem v. Santa Clara Univ.*, 710 F. Supp. 3d 748, 752 (N.D. Cal. Jan. 5, 2024) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)). "An inference of discrimination can be established . . . by showing that others not in [one's] protected class were treated more favorably." *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207 (9th Cir. 2008). "A plaintiff must prove by a preponderance of the evidence . . . that age was the 'but-for' cause of the challenged employer decision." *Gross v. FBL Fin. Serv., Inc.*, 557 U.S. 167, 177-78 (2009); *see Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000) (noting that the "plaintiff's age must have actually played a role in the [employer's decision making] process and had a determinative influence on the outcome").

"Once the plaintiff meets this initial burden, the burden then shifts to the employer 'to articulate some legitimate, nondiscriminatory reason for the' adverse employment action." *Nghiem*, 710 F. Supp. 3d at 752 (quoting *McDonnell Douglas Corp.*, 411 U.S. at 802). "The plaintiff retains the burden of persuasion and can then rebut this purported nondiscriminatory reason by providing evidence that it is pretextual." *Id.* (citing *Texas Dept. of Cmty Affairs v. Burdine*, 450 U.S. 248, 256 (1981)).

Bitisillie bears the ultimate burden to establish a prima facie case of age discrimination. However, at summary judgment, Defendants have the initial burden to show that there is an absence of evidence to support the elements of an age discrimination claim. Once Defendants have met their burden, the burden shifts to Bitisillie to show that the record creates a genuine dispute as to whether a prima facie case of age discrimination has been established.

Defendants argue Bitisillie cannot show she was performing her job satisfactorily, suffered an adverse employment action, nor that similarly situated employees outside Bitisillie's protected class were treated more favorably. (ECF No. 29 at 13-17.) Based on

the record before the Court, it is undisputed that Bitisillie was over forty years of age at the time of the alleged unlawful conduct and therefore the first element of an age discrimination claim has been established. However, the Court finds Bitisillie has not met her burden on summary judgment to establish a prima facie case of age discrimination as to the balance of the prima facie elements of the age discrimination claim because she failed to address the elements of an age discrimination claim under the ADEA. (*See* ECF No. 35.) These elements will be addressed in turn.

### a. __Performance of Duties According to Reasonable Expectations__

In the motion for summary judgment, Defendants have presented evidence that Bitisillie was not performing her job according to reasonable expectations. Specifically, Defendants provided admissible evidence that on at least one occasion, Bitisillie failed to release funds in a timely manner, which resulted in a negative impact to the tribes. (ECF No. 29 at 14.) In addition, Defendants provided admissible evidence establishing Bitisillie completed less than 23% of the required training necessary for the performance of her job duties over the given four-year period which resulted in the temporary termination of her Awarding Certificate. (*Id.* at 13-19) Without the Awarding Certificate, Bitisillie was not able to perform a substantial number of her duties as a Supervisor Self-Determination Specialist. Based on this evidence, Defendants have met their initial burden on summary judgment that Bitisillie was not performing her role according to the BIA's legitimate expectation.

The burden now shifts to Bitisillie to come forward with some evidence to create an issue of fact that she was performing her job satisfactorily. Bitisillie's only argument in response to Defendants' arguments with respect to this element is her assertion that she lost her Awarding Certificate was because she was denied travel requests, even though Garcia received approval. (ECF No. 35 at 18.) However, other than one single denial of a travel request, Bitisillie has failed to come forward with any additional admissible evidence that she was routinely denied travel requests while Garcia's were granted.

Moreover, she provides no admissible evidence or information to counter Defendants' assertions that she did not perform her job satisfactorily due to her delay in releasing funds. Rather, her only response in opposition to this argument is an out of context quote from Eben's deposition in which he states that the work Bitisillie was doing "could have been better." (ECF No. 29-4 at 7.) Thus, Bitisillie has not met her burden to establish an issue of fact exists as to this element of her age discrimination claim and summary judgment should be granted on this claim.

### b.    Adverse Employment Action

Even if the above element could be established, Defendants have also submitted admissible evidence that Bitisillie did not suffer an adverse employment action based on any alleged age discrimination. As to this element, Defendants correctly point out that Bitisillie was not terminated from her position, and she continues to work for the BIA. (ECF No. 36 at 3.) In addition, her GS-level has not changed since 2015. (ECF No. 29-3 at 7.) Thus, according to Defendants, Bitisillie has suffered no adverse employment action in this case. In response, Bitisillie asserts that she suffered an adverse employment action because her supervisory authority was over Garcia was removed, her Awarding Certificate was not renewed, and that she was removed from the line of succession because of her age. (ECF No. 1 at 17-19.) However, Defendants aptly point out that she was never relieved of her general supervisory duties, just supervision over Garcia and only when Eben was notified that a protective order was issued by the Tribal Courts. (ECF No. 29 at 16.) Defendants state that the relief of supervisory authority specifically over Garcia was to comply with the protective order, not due to an intent to discriminate on age. (*Id.*) With regard to the Awarding Certificate, Defendants offer Larson's deposition which clearly states that Bitisillie lost her Awarding Certificate for failing to complete the necessary training and credential requirements, which led to the loss of Awarding Official status. (ECF Nos. 29-9 at 5, 29-10 at 2.) This determination was made by the Director of the BIA and included another individual who also lost their Awarding Certificate for failing to complete the necessary trainings and certification requirements. (ECF No. 29-10 at 2.)

Defendants have met their burden by demonstrating that Bitisillie did not suffer an adverse employment action.

The burden now shifts to Bitisillie to come forward with some evidence to create an issue of fact on this element. Here again, however, Bitisillie has not come forward with any admissible evidence to establish that she was "either replaced by a substantially younger employee with equal or inferior qualifications or discharged under circumstances otherwise giving rise to an inference of age discrimination." *Sheppard v. David Evans & Assoc.*, 694 F.3d 1045, 1049 (9th Cir. 2012).

Rather, Bitisillie merely asserts that she was denied the opportunity to receive the necessary training to maintain her status as an Awarding Official. (ECF No. 35 at 14-15.) She points to one instance in March of 2019 where she was denied a training, but she does not provide any evidence to create an issue of fact that the denial of that single training request was due to her age. (*Id.*) Nor does she provide any admissible evidence that the determination made by the head of agency to terminate her Awarding Certificate was due to her age. Furthermore, the Court notes that four months after her Awarding Certificate was officially revoked, Bitisillie regained her Awarding Official status and Awarding Certificate. (ECF No. 1.)

Regarding Bitisillie's loss of supervisory authority over Garcia, Bitisillie has not presented any evidence that the loss of supervisory authority was an adverse employment action. Beyond references to her own allegations, Bitisillie has not demonstrated how Eben's action of removing her authority over Garcia was unrelated to the BIA's attempt to comply with the Tribal Court's protection order and instead was due to her age. Conclusory statements, speculative opinions, pleading allegations, or other assertions uncorroborated by facts are insufficient to establish the absence or presence of a genuine dispute. *See Soremekun*, 509 F.3d at 984.

Furthermore, Bitisillie has not shown that the temporary removal from the line of succession in April 2022 was not due to the termination of the Awarding Certificate and instead was directly due to her age.

The Court finds that Bitisillie has not met her burden to demonstrate that a genuine issue of fact exists as to whether any adverse employment actions took place and therefore, she cannot establish the third element of the prima facie test for an age discrimination claim.

### c. **Favorable Treatment of Similarly Situated Employees Outside of Her Protected Class**

Finally, with the respect to the fourth element of Bitisillie's age discrimination claim, Defendants have submitted admissible evidence that similarly situated employees outside of the protected class were not treated more favorably than Bitisillie. Bitisillie's age discrimination claim is predicated upon her allegations that she was pressured to enroll in an early retirement plan by her supervisor, she was subjected to improper statements and "jokes" by her supervisor, she lost her supervisory authority and Awarding Certificate due to her age, and Garcia, an individual much younger than her, has obtained equal supervisory authority and responsibilities. (ECF No. 1 at 14-17.)

Defendants argue Bitisillie has not provided any evidence that similarly situated employees were treated more favorably than Bitisillie. (ECF No. 29 at 16.) Defendants point out that Bitisillie's allegations regarding discussion of an early retirement program and Eben's questions about Bitisillie's retirement plans do not arise to age discrimination under prevailing Ninth Circuit law. (*Id.* at 15.)

Furthermore, Defendants make clear Garcia received his Awarding Certificate separately and a few years before Bitisillie's Awarding Certificate was terminated. (*Id.* at 21.) Defendants also provide that Garcia never assumed any of Bitisillie's responsibilities or duties, was at a lower GS level than Bitisillie, and that he never had a supervisory role while at the Carson City BIA office. (*Id.*) Even when Bitisillie lost supervisory authority over Garcia, Garcia was not promoted and instead Eben directly supervised Garcia to comply with the Tribal Court Order. (*Id.* at 16.)

As previously noted above, Defendants also submitted admissible evidence that establishes the termination of Bitisillie's Awarding Certificate and the revocation

supervisory authority in April 2022 was determined by the Director of BIA who cited the lack of completion of training requirements as the reason of termination of the Awarding Certificate. (ECF Nos. 29-9 at 5, 29-10 at 2.) Even after the termination of her Awarding Certificate, Bitisillie was not demoted in GS level or terminated and was given the opportunity to "concentrate on getting her credentials back" so she can regain her supervisory authority and awarding responsibilities. (ECF No. 29-9 at 7.) Four months after her Awarding Certificate was terminated, Bitisillie regained her Awarding Certificate and Awarding Official status. (ECF No. 1 at 13.) Defendants have shown that Garcia was neither a similarly situated individual as Bitisillie nor received favorable treatment. Based on all the above, Defendants have met their burden on summary judgment by demonstrating that similarly situated individuals outside of Bitisillie's protected class, i.e., individuals less than forty years of age, were not treated more favorably.

The burden now shifts to Bitisillie to come forward with some evidence to create an issue of fact on this element. However, Bitisillie has not established that she was "either replaced by a substantially younger employee with equal or inferior qualifications, or discharged under circumstances otherwise giving rise to an inference of age discrimination." *Sheppard v. David Evans & Assoc.*, 694 F.3d 1045, 1049 (9th Cir. 2012).

Bitisillie asserts that the discussion of an early retirement plan was age-based discrimination, but she fails to show how the discussions specific to her or to the office generally were unlawful. Bitisillie herself admitted that the program was encouraged "[b]ut not force[d]." (ECF No. 29-3 at 12.) She has not put forth any evidence of specific comments made by Eben or anyone else at the BIA that demonstrates even circumstantial evidence of age discrimination. As Bitisillie herself notes in her opposition to Defendants' motion, "routine discussion is not actionable." (ECF No. 35 at 5 (citing *Wallace v. O.C. Tanner Recognition Co.*, 299 F.3d 96, 100 (1st Cir. 2002) ("[C]ertainly, company officials are permitted to gather information relevant to personnel planning without raising the specter of age discrimination.")). The crux of Bitisillie age discrimination claim rests on Eben's encouragement and discussions of retirement plans,

however, Bitsillie has not cited a single case from the Ninth Circuit for the proposition that discussions about retirement are evidence of age discrimination.

Bitsillie also alleges Garcia was unilaterally hired by Eben, "without plaintiff's input," and given substantially responsibility, but she has not provided a scintilla of evidence to support her claim. (ECF No. 35 at 5.) Nowhere has she shown what BIA or applicable federal hiring rules were broken or what policy required Bitisillie's supervisor to obtain Bitisillie's permission or input when hiring BIA personnel. Bitisillie also alleges that a comment made by Eben regarding "Old School vs. New School" as the basis of conflict between Garcia and Bitisillie as the evidence to demonstrate age discrimination. (ECF No. 35 at 6.) But as Defendants correctly note, any removal of Bitisillie's supervisory authority over Garcia can be seen as the BIA's adherence to the protective order Bitisillie obtained against Garcia and a single comment about "Old School vs. New School" is not enough to arise concerns of age discrimination. *See Rose v. Wells Fargo & Co.*, 902 F.2d 1417, 1423 (9th Cir. 1990); *Nidds v. Schindler Elevator Corp.*, 113 F.3d 912, 918-19 (9th Cir. 1996). Based on all the above, Bitisillie has not shown how Garcia was similarly situated and received more favorable treatment and she had made no reference to any other similarly situated individuals outside of her protected class, individuals under forty years of age, of receiving received favorable treatment.

Finally, Bitisillie asserts that her requests to receive and complete the necessary trainings for her Awarding Certificate were denied by Eben due to her age. But here again, Bitisillie provides no more than allegations of one instance of a declined request to travel, and fails to provide evidence of any other denials, where the basis of the denial was due to her age. In short, Bitisillie has not shown that but-for the alleged intent to discriminate based on age, she would have completed the missing 62 hours of training over the given four-year period.

The Court finds that Bitisillie has not shown that a genuine dispute exists as to whether similarly situated individuals outside of her protected class were treated favorably. Thus, Bitisillie has not met her burden and cannot establish the fourth element

of the prima facie test for an age discrimination claim.

For all the reasons stated above, the Court finds Bitisillie failed to meet her burden to raise a genuine dispute of material fact as to the prima facie case of age discrimination. Because Bitisillie has not met her burden to establish a prima facie case of age discrimination, the Court need not reach the parties arguments regarding pretext. Thus, the Court grants the summary judgement in favor of Defendants with respect to Bitisillie's age discrimination claim.

### 2.    Bitisillie's Gender Discrimination Claim Under Title VII

Next, Defendants argue they are entitled to summary judgment on Bitisillie's Title VII gender discrimination claim because Bitisillie has not made a prima facie case of gender discrimination and cannot establish pretext for her gender discrimination claim.

Title VII makes it unlawful for an employer to discriminate against an individual "because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). To establish a prima facie case of discrimination, a plaintiff must prove: "(1) that the plaintiff belongs to a class of persons protected by Title VII; (2) that the plaintiff performed [their] job satisfactorily; (3) that the plaintiff suffered an adverse employment action; and (4) that the plaintiff's employer treated the plaintiff differently than a similarly situated employee who does not belong to the same protected class as the plaintiff." *Cornwell v. Electra Cent. Credit Union*, 439 F.3d 1018, 1028 (9th Cir. 2006) (citing *McDonnell Douglas Corp.*, 411 U.S. at 802). "The plaintiff carries the initial burden of establishing a prima facie case of discrimination." *Panelli v. First Am. Title Ins. Co.*, 704 F. Supp. 2d 1016, 1024 (D. Nev. Mar. 30, 2010) (citing *McDonnell Douglas*, 411 U.S. at 802). "If the plaintiff succeeds in establishing a prima facie case, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its allegedly discriminatory conduct. If the defendant provides such a justification, the burden shifts back to the plaintiff to show that the defendant's justification is a mere pretext for discrimination." *Id.* (citing *McDonnell Douglas*, 411 U.S. at 802-04.)

Bitisillie bears the ultimate burden to establish a prima facie case of gender

discrimination. However, at summary judgment, Defendants have the initial burden to show there is an absence of evidence to support the elements of a gender discrimination claim or that the facts are undisputed with respect to these elements. Once Defendants have met their burden, the burden shifts to Bitisillie to show that the record creates a genuine dispute as to whether a prima facie case of gender discrimination has been established.

Here, as with the age discrimination claim above, Defendants argue Bitisillie cannot prove she suffered an adverse employment action because of her gender or that similarly situated employees outside of Bitisillie's protected class were treated more favorably. (ECF No. 29 at 19-22.) Based on the record before the Court, it is undisputed that the first element of a gender discrimination claim has been established. Defendants do not raise arguments as to the second element of gender discrimination, satisfactory performance. However, with respect to the other two elements of this claim, the Court finds Bitisillie has not made a prima facie case of gender discrimination because Bitisillie failed to adequately address these elements of a gender discrimination claim under Title VII in her opposition. (*See* ECF No. 35.) Rather, Bitisillie mixes her claim of gender discrimination and a hostile-based work environment claim, which was not pled in this case, in her opposition. (*See* ECF No. 35 at 7-11.) To the extent the Court understands Bitisillie arguments on gender-based discrimination, the Court addresses them in turn.

### a.    Adverse Employment Action

As previously noted above, the evidence is undisputed that Bitisillie was not terminated and in fact continues to work for the BIA. (ECF No. 36 at 3.) Nor has her GS-level changed since 2015. (ECF No. 29-3 at 7.) To the extent the Court understands her arguments on this element, Bitisillie raises similar allegations of gender discrimination as her age discrimination claim noted above: specifically, that she was pressured to apply for early retirement due to her gender and she lost of her supervisory authority and Awarding Certification due to her gender.

In their motion, Defendants aptly point out that Bitisillie was never relieved of her

general supervisory duties, just supervision over Garcia and only when Eben was notified that a protective order was issued by the Tribal Courts. (ECF No. 29 at 16.) Defendants argue the relief of Bitisillie's supervisory authority over Garcia was to comply with the protective order, not due to an intent to discriminate on age and favor a younger individual. (*Id.*) With regard to the Awarding Certificate, Defendants offer Larson's deposition which clearly states that Bitisillie lost her Awarding Certificate for failing to complete the necessary training and credential requirements, which led to the loss of Awarding Official status. (ECF Nos. 29-9 at 5, 29-10 at 2.) This determination was made by the Director of the BIA and included another individual who also lost their Awarding Certificate for failing to complete the necessary trainings and certification requirements. (ECF No. 29-10 at 2.) Defendants have met their burden by demonstrating that Bitisillie did not suffer an adverse employment action.

The burden now shifts to Bitisillie to come forward with some evidence to create an issue of fact on this element. As with Bitisillie's age discrimination claim, discussion of retirement plans by Eben is not enough to arise evidence of gender discrimination. As Defendants point out, the early retirement plan was discussed openly and majority of the employees of the Carson City BIA office are women. (ECF No. 29 at 20.) Bitisillie has not cited a single case from the Ninth Circuit in support of her claim that discussion of retirement plans or "encouragement" constitute an adverse action to arise concerns of gender discrimination. Additionally, as discussed above, Bitisillie has not shown that the loss of supervisory authority was an adverse action. Beyond references to her own allegations, Bitisillie has not demonstrated how Eben's action of removing her authority over Garcia was unrelated to the BIA's attempt to comply with the Tribal Court's protection order and instead was due to her gender. Bitisillie has not provided any admissible evidence that the temporary removal from the line of succession in April 2022 was not due to the termination of the Awarding Certificate and instead was due to her gender.

Based on the above, the Court finds that Bitisillie has not shown that a genuine dispute exists as to the adverse employment action element. Thus, Bitisillie has not met

her burden and cannot establish the third element of the prima facie test for a gender discrimination claim.

**b.    Favorable Treatment of Similarly Situated Employees Outside of Her Protected Class**

Next, Defendants have submitted evidence that similarly situated employees outside of the protected class were not treated more favorably than Bitisillie.

Bitisillie's gender discrimination claim is predicated upon her allegations that the women at her office were pressured to enroll in an early retirement plan by her supervisor, she was subjected to improper statements and "jokes" by her supervisor, she lost her supervisory authority and Awarding Certificate due to her gender, and Garcia, a male, obtained equal supervisory authority and responsibilities. (ECF No. 1 at 17-19.)

Defendants argue Bitisillie has not provided any evidence that similarly situated employees outside of her protected class were treated more favorably than Bitisillie. (ECF No. 29 at 16.) Defendants provide evidence which shows that the early retirement plan was discussed freely with the entire office and not targeted to Bitisillie specifically or women generally. (ECF Nos. 29 at 20; 29-8 at 4-5.) Defendants correctly point out that there is no evidence in the record that shows the plan was instituted and encouraged with gender in mind. Furthermore, Defendants acknowledge that some unsavory comments were made by Eben, but there is no evidence that these comments were directed to Bitisillie or women generally and were not pervasive enough to arise concerns of gender-based discrimination. (ECF No 29 at 20.)

Defendants also provide evidence that shows the termination of Bitisillie's Awarding Certificate and the revocation supervisory authority in April 2022 was determined by the Director of BIA who cited the lack of completion of training requirements as the reason of termination of the Awarding Certificate. (ECF Nos. 29-9 at 5, 29-10 at 2.) Even after the termination of her Awarding Certificate, Bitisillie was not demoted in GS level or terminated and was given the opportunity to "concentrate on getting her credentials back" so she can regain her supervisory authority and awarding

responsibilities. (ECF No. 29-9 at 7.) Four months after her Awarding Certificate was terminated, Bitisillie regained her Awarding Certificate and Awarding Official status. (ECF No. 1 at 13.)

Regarding the allegations surrounding Garcia, Defendants provide that Garcia never assumed any of Bitisillie's responsibilities or duties, was at a lower GS level than Bitisillie, and that he never had a supervisory role while at the Carson City BIA office. (ECF No. 29 at 21.) Even when Bitisillie lost supervisory authority over Garcia, Garcia was not promoted and instead Eben directly supervised Garcia to comply with the Tribal Court Order. (*Id.* at 22.) Defendants also aptly point out that any alleged aggressive behavior by Garcia is not actionable as gender discrimination under Title VII. (*Id.* at 21.) Even assuming the alleged behavior was of concern, it goes to a possible hostile work environment claim, not gender discrimination. Defendants have presented evidence that Garcia did not receive favorable treatment over Bitisillie. As such, Defendants have met their burden by demonstrating that similarly situated individuals outside of Bitisillie's class did not receive favorable treatment.

The burden now shifts to Bitisillie to come forward with some evidence to create an issue of fact on this element. Bitisillie simply restates that some unsavory comments were made by her supervisor but provides no evidence of comments were directed at Bitisillie or other women at the office. However, a single or few comments not directed at Bitisillie do not show gender discrimination under Ninth Circuit principles. *See Meritor Savings Bank v. Vinson*, 477 U.S. 57, 67 (1986) ("[S]poradic use of abusive language, gender-related jokes, or occasional teasing" does not constitute gender discrimination.); *Jordan v. Clark*, 847 F.2d 1368, 1374-75 (9th Cir. 1988) (men and women telling "off color" jokes at work did not create an abusive environment). Bitisillie has not provided a single instance where Eben or anyone else in her office directed a comment or statement to Bitisillie regarding her gender. Much of Bitisillie's opposition to Defendants' motion raises arguments regarding hostile work environment but as discussed below, Bitisillie did not raise a hostile-work environment claim in her complaint. *See infra* III.B.

Bitisillie also references her allegations about Garcia in her opposition, but she has not provided anything beyond the allegations stated in her complaint, which is insufficient to meet her burden on summary judgment. (ECF No. 35 at 18.) As the Defendants noted, Garcia was not hired unilaterally and Bitisillie's loss of supervisory authority over Garcia was not due to gender but because Bitisillie had obtained a protective order against Garcia and because lost her Awarding Certificate due to her own failure to keep up with training requirements. (ECF No. 29 at 19-22.) Garcia had the requisite training and credentials for his Awarding Certificate and Garcia never assumed any of Bitisillie's duties. (ECF Nos. 29 at 21; 29-14 at 2.) When Bitisillie was no longer Garcia's supervisor, the only change to Garcia's responsibilities and duties was that Garcia directly reported to Eben. (ECF No. 29 at 21.) At no point did Garcia gain any of Bitisillie's responsibilities. (*Id.*) Bitisillie has failed to show that any individual at the BIA, including Garcia, received preferential treatment over Bitisillie due to her gender. Bitisillie has not presented any admissible evidence to show that the removal of her supervisory authority over Garcia, or the termination of her Awarding Certification, is related to her gender.

The Court finds Bitisillie has not met her burden on summary judgment and thus cannot establish the fourth element of the prima facie, i.e., that similarly situated individuals outside of her protected class were treated more favorably than her.

For the reasons stated above, the Court finds Bitisillie failed to meet her burden to raise a genuine dispute as to the prima facie case of gender discrimination. Because Bitisillie has not met her burden to establish a prima facie case of gender discrimination, the Court need not reach the parties arguments regarding pretext. Thus, the Court grants the summary judgement in favor of Defendants with respect to Bitisillie's gender discrimination claim.

### 3.    Bitisillie's Claim of Retaliation

Finally, Defendants argue they are entitled to summary judgment on Bitisillie's retaliation claim because Bitisillie failed to exhaust her administrative remedies on this

claim.[4] In this claim, Bitisillie alleges Defendants retaliated against her by removing her supervisory authority after she obtained a protective order against Gargia in May of 2019 and filed an EEO complaint against the BIA. (ECF No. 1 at 19.) The alleged retaliation occurred in April of 2022 when the agency refused to renew her warrant as an Awarding Official, removed her from the supervisory line of succession, and placed her at a lower ranking. (*Id.*) Defendants argue these claims were not asserted in Plaintiff's EEO complaint as they arose in April 2022, three years after her original EEO complaint was filed and are not related to the protective order and the allegations in the EEO complaint. (ECF No. 29 at 23.) Defendants further argue that even if Bitisillie's new claims are related to Bitisillie's original EEO complaint, Bitisillie failed to demonstrate a causal link between protected activity and adverse action. (*Id.* at 24.)

"Exhausting administrative remedies by filing a timely charge with the EEOC or the appropriate state agency is a statutory pre-requisite for an employee to pursue litigation under both Title VII and the ADEA." *Ramirez v. Kingman Hosp. Inc.*, 374 F. Supp. 3d 832, 854 (D. Ariz. Mar. 18, 2019) (citing *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 47 (1947)). "The jurisdictional scope of the plaintiff's court action depends on the scope of the EEOC charge and investigation." *Leong v. Potter*, 347 F.3d 1117, 1122 (9th Cir. 2003). While "[t]he specific claims made in district court ordinarily must be presented to the EEOC, . . . the district court has jurisdiction over any charges of discrimination that are 'like or reasonably related to' the allegations made before the EEOC, as well as charges that are within the scope of an EEOC investigation that reasonably could be expected to grow out of the allegations." *Id.*; *see E.E.O.C. v. Farmer Bros. Co.*, 31 F.3d 891, 899 (9th Cir. 1994); *Green v. Los Angeles Cty. Superintendent of Sch.,* 883 F.2d 1472, 1475-76 (9th Cir. 1989). The court "should consider a plaintiff's claims to be reasonably related to allegations in the charge to the extent that those claims are

---

[4]    In her complaint, Bitisillie alleges a cause of action of retaliation against Defendants but nowhere in her complaint does she state whether this cause of action is asserted under the ADEA, Title VII, or another statute. The Court presumes for the sake of the motion that the cause of action is under both the ADEA and Title VII in coordination with her claims of age and gender discrimination.

consistent with the plaintiff's original theory of the case." *B.K.B. v. Maui Police Dep't.*, 276 F.3d 1091, 1100 (9th Cir. 2002). Although "[w]e construe the language of EEOC charges with the utmost liberality, there is a limit to such judicial tolerance when principles of notice and fair play are involved." *Freeman v. Oakland Unified School Dist.*, 291 F.3d 632, 636 (9th Cir. 2002)

"[S]ubstantial compliance with the presentment of discrimination complaints to an appropriate administrative agency is a jurisdictional prerequisite." *Sommatino v. United States*, 255 F.3d 704, 708 (9th Cir. 2001). When a plaintiff entirely fails to exhaust a claim and the claim is not "like or reasonably related to" one that has been exhausted, the court lacks jurisdiction to consider the claim. *Id.* at 709 ("In cases where the plaintiff has never presented a discrimination complaint to the appropriate administrative authority, the district court does not have subject matter jurisdiction.")

In their motion, Defendants contend Bitisillie only exhausted her administrative remedies for her age and gender discrimination claims. (ECF No. 29 at 7.) They argue Bitisillie's retaliation claim before this Court which include allegations of adverse actions that took place starting in 2021 are not properly before the Court as her EEO complaint only incorporates events up to mid-2019 and raises no retaliation claim. (*Id.* 7, 23.) In her opposition to Defendants' motion, Bitisillie does not address whether she has exhausted the administrative process. (*See* ECF No. 35.)

Here, the Court finds that Bitisillie did not adequately exhaust her administrative remedies regarding her retaliation claim. Plaintiff filed her original EEO complaint in July of 2019 for alleged conduct dated between September 2015 and May 2019. (ECF No. 29, 6-9.) She moved to amend her complaint on May 24, 2022, but the AJ denied the motion after concluding that the proposed amended claims were unrelated to Plaintiff's original claims. (*Id.*) Bitisillie's retaliation claims were never accepted nor investigated by the BIA. (*Id.*) Bitisillie has not directly addressed whether the alleged incidents of retaliation are like or reasonably related to the allegations in the charge. *See Green*, 882 F.2d at 1475-76. Bitisillie's retaliation claims, specifically her claim of loss of supervisory authority and

status as an Awarding Official, were not presented to the BIA and are outside the scope of what was alleged in the EEO charge. The AJ did not find Bitisillie's new allegations in May of 2022 to be related to her original EEO charge and the Court has no reason to find otherwise. Because Bitisillie has not shown that she substantially complied with the exhaustion requirement for her retaliation claims, the claim must be dismissed.

However, even if the Court were to find that Bitisillie's retaliation claim is properly before the Court, the Court finds that Bitisillie has not made a prima facie case of retaliation. "To prevail on her retaliation claim, a plaintiff must demonstrate: (1) she engaged in a protected activity; (2) she suffered an adverse employment action; and (3) there is a causal link between the protected activity and the adverse employment action." *Kennedy v. UMC Univ. Med. Ctr.*, 203 F. Supp. 3d 1100, 1108 (D. Nev. 2016) (citing *Dawson v. Entek Intern*, 630 F.3d 928, 936 (9th Cir. 2011)). "To establish causation, a plaintiff must show that 'engaging in the protected activity was one of the reasons for [the adverse employment decision] and that but for such activity [he] would not have [suffered the adverse employment decision].'" *Englert v. Las Vegas Metro. Police Dep't*, No. 2:22-cv-00774-MMD-EJY, 2024 WL 3459249, at *4 (D. Nev. July 17, 2024) (quoting *Villiarimo v. Aloha Island Air, Inc.,* 281 F.3d 1054, 1064-65 (9th Cir. 2002)).

"The burden of production then shifts to defendants to advance a legitimate, nonretaliatory reason for the adverse employment action. If defendants do so, then plaintiffs have the ultimate burden of showing that defendants' explanations are pretextual." *Stewart v. SBE Ent. Grp., LLC*, 239 F. Supp. 3d 1235, 1246 (D. Nev. Mar. 7, 2017) (citing *Steiner v. Showboat Operating Co.*, 25 F.3d 1459, 1465 (9th Cir. 1994)).

The Court finds Bitisillie's removal from the line of supervisory authority, loss of Awarding Certificate, and status as Awarding Official were not adverse actions for the purposes of a retaliation claim. Bitisillie was not terminated and in fact continues to work for the BIA. (ECF No. 36 at 3.) Nor has her GS-level changed since 2015. (ECF No. 29-3 at 7.) Bitisillie alleges she was refused from renewing her Awarding Certificate because of her prior EEO complaint and her protective order against Garcia. (ECF No. 1 at 19.) Defendants offer Larson's deposition which clearly states that Bitisillie lost her Awarding

Certificate for failing to complete the necessary training and credential requirements, which led to the loss of Awarding Official status. (ECF Nos. 29-9 at 5, 29-10 at 2.) This determination was made by the Director of the BIA and included another individual who also lost their Awarding Certificate for failing to complete the necessary trainings and certification requirements. (ECF No. 29-10 at 2.) Bitisillie contends that she was denied one training request by Eben, but she does not show that how the denial of a single training request was due to her EEO charge or her protective order against Garcia and was then the cause of her not completing certification requirements over given the four-year period. Four months after her Awarding Certificate was revoked, Bitisillie regained her Awarding Official status and the necessary Certificate. (ECF No. 1.)

Additionally, Defendants point out that Bitisillie's supervisory authority over Garcia was revoked after Bitisillie obtained a protective order against Garcia. (ECF No. 29 at 24-25.) Defendants contend this was done in compliance with protocol and what can be seen as reasonable steps to ensure proper work-place efficiency and adherence to the protective order issued by the Tribal Courts, without having to terminate any individual or substantially change the duties or responsibilities of Bitisillie, Garcia, or Eben. Because Bitisillie did not suffer any adverse action nor is there a causal link between protected activity and adverse employment action, the Court finds Bitisillie failed to meet her burden to raise a genuine dispute of material fact as to the prima facie case of retaliation. Thus, the Court grants the summary judgement in favor of Defendants with respect to Bitisillie's retaliation claim and thus grants Defendants' summary judgment motion in its entirety.

**B.     Bitisillie's Motion for Partial Summary Judgment**

Bitisillie seeks summary judgment on a claim of "hostile work environment and gender discrimination." (ECF No. 31 at 9.) Bitisillie contends she was discriminated based on her gender by being subject to a hostile work environment. (ECF No. 37 at 2.) Defendants contend Bitisillie's motion is ambiguous as to whether Bitisillie is moving on a claim for hostile work environment or on her claim for gender discrimination and interpret her motion to contend solely a claim for hostile work environment under Title VII. (ECF No. 34 at 2.)

1    The Court agrees with the Defendants. While Bitisillie states both gender-based

2    discrimination and hostile work environment, she mostly cites to case law regarding

3    hostile work environment. (ECF Nos. 31 at 13; 37 at 8-9.) No where in her motion for

4    partial summary judgment or reply to Defendants' opposition to her motion does Bitisillie

5    cite relevant case law for gender-based discrimination. (*See* ECF Nos. 31; 37.) To the

6    extent she has developed a claim, the Court interprets Bitisillie's motion for partial

7    summary judgment to be a claim for hostile work environment.

8    However, this claim is not properly before the Court because Bitisillie does not

9    include a claim for hostile work environment in her complaint. (*See* ECF No. 1.) Because

10   Bitisillie did not allege hostile work environment in her claim, the Court may not consider

11   this new claim. *See Navajo Nation v. U.S. Forest Serv.*, 535 F.3d 1058,1080 (9th Cir.

12   2008), *overruled on other grounds by Apache Stronghold v. United States*, 95 F.4th 608

13   (9th Cir. 2024) (where allegations are not in the complaint, "raising such claim[s] in a

14   summary judgment motion is insufficient to present the claim to the district court"); *Wasco*

15   *Prods., Inc. v. Southwall Techs., Inc.*, 435 F.3d 989, 992 (9th Cir. 2006) ("Summary

16   judgment is not a procedural second chance to flesh out inadequate pleadings."); *see*

17   *also Moreno v. Aranas*, No. 3:18-cv-00137-MMD-CLB, 2020 WL 5743934, at *3 (D. Nev.

18   Sept. 24, 2020) ("Because Plaintiff did not allege negligence arising from the surgery in

19   his Complaint, the Court may not consider this new claim" at summary judgment.). If

20   Bitisillie wished to pursue a claim for hostile work environment, the appropriate action

21   would have been to seek leave to amend her complaint prior to the close of discovery,

22   not raising it for the first time at summary judgment. *See Martini E Ricci Iamino S.P.A. –*

23   *Consortile Societa Agricola v. Trinity Fruit Sales Co.*, Inc., 30 F. Supp. 3d 954, 971-72

24   (E.D. Cal. 2014) (citations omitted) ("[A] plaintiff generally may not advance a new claim

25   at the summary judgment stage. If a plaintiff wishes to pursue a new claim, generally the

26   proper procedure is to file an amended complaint prior to summary judgment.").

27   Accordingly, the Court denies Bitisillie's motion for partial summary judgment.

28   ///

24

IV.    **CONCLUSION**

**IT IS THEREFORE ORDERED** that Defendants' Motion for Summary Judgment, (ECF No. 29), is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion for Partial Summary Judgment, (ECF No. 31), is **DENIED**.

**IT IS FURTHER ORDERED** that the Clerk **ENTER JUDGMENT** and **CLOSE THIS CASE**.

**DATED**:  January 10, 2025

**UNITED STATES MAGISTRATE JUDGE**